# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEON STILES, | ) |
|                  Plaintiff, | ) No. 14 CV 5861 |
| v. | ) Magistrate Judge Young B. Kim |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) |
|                  Defendant. | ) May 23, 2016 |

## MEMORANDUM OPINION and ORDER

Leon Stiles filed an application for Social Security Disability Insurance Benefits ("DIB") alleging that he is disabled because of depression and arthritis. After the Appeals Council declined to review the administrative law judge's ("ALJ") most recent decision denying benefits to Stiles, he filed this suit seeking judicial review. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment. For the following reasons, Stiles's motion is denied, the government's motion is granted, and the Commissioner's decision is affirmed:

## Procedural History

Stiles applied for DIB on December 17, 2008, claiming a disability onset date of December 12, 2008. (Administrative Record ("A.R.") 344.) His claim was denied initially in March 2009, and on reconsideration in August 2009. (Id. at 146-47.) After an ALJ issued an unfavorable decision on January 27, 2011, (id. at 148-63), the Appeals Council remanded the case for further proceedings, (id. at 164-66). On

remand, the same ALJ held a second hearing on February 21, 2013, (id. at 105-45), and again issued a decision denying benefits on April 9, 2013, (id. at 16-40). When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. (Id. at 1-6); *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Stiles filed this action seeking judicial review, (R. 1); *see* 42 U.S.C. § 405(g), and the parties consented to this court's jurisdiction, (R. 6); *see* 28 U.S.C. § 636(c).

**Facts**

Stiles, who was 58 years old at the time of the second hearing, worked as a practicing attorney for two decades. But in the years leading up to his application for DIB, he suffered setbacks in his professional and personal life that caused him to become increasingly depressed. After he left the practice of law, Stiles worked part-time as a desk clerk, diversity officer, telemarketer, human resources assistant, and more recently, as a shipping and receiving clerk. At his supplemental hearing, he presented both documentary and testimonial evidence in support of his claim that his depression and arthritis prevent him from returning to full-time work.

**A.    Medical Evidence**

On December 12, 2008, Stiles walked in front of a moving bus after losing his job for the third time since 2007. (A.R. 501.) Fortunately a bystander pulled him out of the way, and Stiles immediately went to the University of Chicago Medical Center to seek help. (Id.) He reported to the physicians there that he had been depressed since 2006 when his relationship with his fiancée ended, he lost his home

2

to foreclosure, and he was laid off. (See id.) Stiles was diagnosed with major depressive disorder with psychosis upon admission and assigned a global assessment of functioning ("GAF") score of 15, indicating that he was in danger of hurting himself or others.[1] (See id. at 506); American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 34 (4th ed. 2000) ("DSM-IV-TR"). He was transferred to the University of Illinois at Chicago Medical Center ("UIC") where he received inpatient treatment for three days. (A.R. 552.) Upon discharge he had a GAF score of 45[2] but he exhibited improved mood, normal speech, good judgment and insight, and fair concentration. (Id. at 552-56.)

In the weeks following Stiles's hospitalization, he began seeing a social worker at UIC for weekly therapy sessions. (See id. at 586-89.) He also started seeing Dr. Eric Gausche, a psychiatrist at UIC, once or twice a month for medical management. (See id. at 590-92.) From December 2008 through early 2009, Stiles's treatment records show improvement in his mood and motivation. Dr. Gausche wrote in January and February 2009 that Stiles was feeling better and that his depression medications had been "very helpful." (Id. at 578.) Dr. Gausche assigned Stiles a GAF score of 60, indicating moderate symptoms, and noted significant

---

[1] Although the American Psychiatric Association discontinued the use of the GAF metric in 2013, *see Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013), the GAF score was still in use at the time of Stiles's psychiatric evaluations noted in this record, *see Gully v. Colvin*, 593 Fed. Appx. 558, 561 n.2 (7th Cir. 2014).

[2] A GAF between 41 and 50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

improvements in energy level, anxiety, and motivation. (Id. at 578, 580, 617); DSM-IV-TR. Stiles rated his depression as a 4.5 or 5 out of 10, with 10 being suicidal. (A.R. 578, 614, 617.)

In February 2009, Dr. Jeffrey Karr performed a consultative mental evaluation of Stiles and diagnosed him with major depressive disorder in partial remission. (Id. at 625.) Dr. Karr assigned him a GAF score of 65, representing mild symptoms, and noted that Stiles presented as dysphoric and somewhat anxious. (See id.); DSM-IV-TR. The following month Dr. Tyrone Hollerauer completed a psychiatric review and concluded that Stiles's major depression is not a severe impairment. (A.R. 629.) Dr. Hollerauer opined that Stiles has only mild restrictions in activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation of extended duration. (Id. at 639.) In July 2009, Dr. Howard Tin affirmed Dr. Hollerauer's opinion, noting that Stiles's allegations are only "partially credible" because Stiles reported that he searches the internet for two to three hours at a time but also says he can only concentrate for a half hour. (Id. at 654.)

Meanwhile, Stiles continued to see his psychiatrist and therapist at UIC on a weekly or bi-weekly basis from March 2009 through January 2011, and during that period he consistently rated his depression as being around a 5 out of 10. (See, e.g., id. at 603-609, 673, 722, 834-44, 906-42.) In May 2009, Stiles reported walking three to four miles three times a week. (See id. at 603.) His psychiatrist generally noted that Stiles was stable and doing well, and throughout his treatment Stiles

4

denied side effects from his medication. (See, e.g., 836-38, 1005-07.) Although his mood often worsened when he faced external work and financial stressors, (id. at 787-97, 834-44), Stiles continued to make progress in his therapy sessions, (see, e.g., id. at 661-64, 708-710). His therapist, Christina James, described him as depressed, but with normal speech and cognitive functioning, congruent affect, organized and normal thought process and content, and normal insight and judgment. (See, e.g., id. at 665, 763-64, 1110.) She wrote a letter in October 2010 noting that Stiles complained of a depressed mood most days, anhedonia, sleep and concentration difficulties, and feelings of guilt. (Id. at 718.) James also wrote that during her treatment of Stiles, "he has reported concerns that his depression and concentration difficulties would impede his ability to maintain a full-time job." (Id.)

Stiles's regular therapy sessions tapered off in early 2011 when James took a position elsewhere and a grant funding his treatment ended. (See id. at 1110, 1147, 1229.) Dr. Sharad Garbharran, a psychiatrist at UIC who took over Stiles's medical management for Dr. Gausche, reported in March 2011 that Stiles's mood was "pretty good" and that he showed normal speech, cognitive functioning, affect, thought process and content, social interactions, insight, and judgment. (Id. at 1147.) Dr. Garbharran noted in June 2011 that Stiles had trouble making regular therapy visits after March 2011, but that he had "significantly improved," was "currently stable and doing well," and "endorsed generally good mood, sleep and appetite throughout [the] course of treatment." (Id. at 1229.)

5

As for Stiles's physical impairments, Dr. M.S. Patil conducted an internal medicine consultative examination in July 2009 and noted that Stiles complained of mild to moderate pain in his knees and left elbow, rating his pain as an 8 out of 10. (Id. at 643.) Stiles reported that he has moderate difficulty walking or standing for more than 15 to 20 minutes. (Id.) Dr. Patil noted that during the examination Stiles's gait was normal, but he had difficulty with walking on heels and toes, getting on and off the exam table, and squatting and arising. (Id. at 645.) An x-ray of his right knee revealed mild medial joint space narrowing without evidence of osteophyte formation or subchondral sclerosis, and no evidence of joint effusion. (Id.) In a July 2009 opinion, state agency consultant Dr. David Bitzer concurred with Dr. Patil and concluded that Stiles's allegations are only "partially credible" because although he reported difficulty bending and "completing all physical activities[,]" "[o]bjective evidence shows mild abnormalities which should cause no more than minimal limitations." (Id. at 657.)

Stiles received treatment at Mile Square Health Center for hypertension starting in May 2011. (Id. at 1242.) The record shows that he made only occasional visits every several months to Mile Square for medication refills. (See, e.g., 1238, 1235, 1249.) During a December 2011 visit, Stiles reported that he had "weaned himself off depression medications" after his free therapy program at UIC ended. (Id. at 1239.) In August 2012 he told a nurse at Mile Square that heavy lifting at his job caused him to have back pain. (Id. at 1235.)

6

**B.     Stiles's Hearing Testimony**

At his second hearing before an ALJ in February 2013, Stiles testified about his work history.  (See A.R. 105-45.)  He referenced his testimony in the first hearing, during which he said that he worked as an attorney after graduating from law school in 1984. (Id. at 84-85.)  With the exception of two years when he did non-legal work, Stiles practiced law from 1984 through 2007.  (Id. at 85.)  After he was laid off from a state's attorney's office position in March 2007, (id. at 86), he worked a variety of part-time jobs until he was hired full-time by the Chicago Transit Authority in August 2008, (id. at 61, 70-71).  However, he was fired on December 12, 2008—the date identified as the alleged disability onset date—for purportedly spending too much time on social networks during work hours, not meeting work-product standards, and having too many unjustified absences.  (Id. at 70-71.)  Stiles next worked part-time as a human resources assistant in May 2009.  (Id. at 67, 109-10.)  He held that position until January 2012, when he transitioned into a part-time shipping and receiving role with the same employer.  (Id. at 110-11.)  Stiles was still employed in that job at the time of the second hearing, and he testified that he works about 20 hours per week.  (Id. at 111-12.)  He explained that he handles incoming and outgoing shipments of books and other library materials, which requires him to lift and carry boxes weighing up to 50 pounds.  (Id. at 113, 115.)

In reference to his mental impairments, Stiles testified that his depression had worsened over the past year and that sometimes he is so depressed that he does

7

not go to work. (Id. at 115-16.) He said that he misses about one day a week. (Id. at 116.) He further stated that he is "still totally depressed" and "never happy," (id. at 122), and that he has "a minor case of obsessive compulsion" which leads him to "work [him]self to death every day," (id. at 123). He explained that his depression makes it difficult to interact with his superiors and coworkers, and that he has problems with anger. (Id. at 124-25.) At his first hearing, Stiles testified that his inability to concentrate interfered with his ability to complete tasks as a human resources assistant. (Id. at 81.) But during the second hearing, he denied having concentration or focus issues in his position as a shipping and receiving processor. (Id. at 128-29.) Stiles testified that he takes medication for his depression and that he received weekly counseling from December 2008 through June 2011. (Id. at 120-21.)

As for his physical impairments, Stiles testified that he suffers from arthritis in his knees and that his legs "buckle for no reason at all." (Id. at 76, 127.) He said that he has not received treatment for his arthritis because he lacks insurance, but that he takes ibuprofen every other day. (Id. at 77, 129.) He further testified that he "can't do physical labor anymore" and cannot stoop or bend. (Id. at 80.) He explained that both of his knees "have gotten worse" since his right knee was x-rayed in July 2009 and that he also suffers from back pain. (Id. at 128-29.)

Stiles offered testimony about his activities of daily living, stating that he used to enjoy going out to dinner, dancing, writing, reading, and playing basketball. (Id. at 127.) He said that he can no longer engage in these activities because of knee

8

problems, lack of interest, low energy, and concentration issues. (Id. at 127-28.) Stiles testified that after he gets home from work, he might "watch the news maybe a little bit" before "pass[ing] out." (Id. at 125.) He also said that he spends at least three hours a week sending out resumes. (Id. at 118-19.)

**C.	Vocational Expert's Testimony**

A vocational expert ("VE") testified at the hearing and provided her opinion with respect to the kinds of jobs a person with certain hypothetical limitations could perform. (A.R. 138-43.) The VE first explained that Stiles's various past jobs fell into the categories of skilled and semi-skilled work ranging from sedentary to medium exertion levels. (Id. at 138-39.) Then the ALJ asked the VE to consider a hypothetical person of Stiles's age and past work history who could lift and carry 50 pounds occasionally and 25 pounds frequently, could stand and walk about six hours in an eight-hour workday and sit about six hours with normal rest periods, and who should avoid high stress jobs. (Id. at 139.) The VE testified that such an individual would not be able to perform Stiles's past work as an attorney or diversity officer, but the person would be able to work as a desk clerk and a shipping clerk. (Id. at 139-40.) The VE explained that the desk clerk and shipping clerk jobs are not considered high stress because they do not have high productivity requirements and do not involve complex issues or a high level of responsibility. (Id. at 140.) She further opined that those jobs only allow for a maximum of 10 percent off-task time. (Id. at 140-41.) When the ALJ noted that Stiles's current employer seems to tolerate absences beyond one day a month, the VE responded

9

that Stiles's employer had been "highly tolerant" and that normally, he would not be able to sustain his employment with that level of absenteeism. (Id.)

Stiles's attorney also questioned the VE, asking whether any jobs would be available for a person fitting the ALJ's hypothetical description with the additional limitations of no contact with the general public and minimal contact with coworkers and supervisors. (Id.) The VE testified that such an individual would be unable to work as a desk clerk or shipping clerk. (Id. at 142.) Stiles's attorney then asked about an individual with the same restrictions as his previous hypothetical, but with the additional limitation of being off task for 20 percent of the time. (Id.) The VE responded that such a person "would not sustain productivity." (Id.) Finally, Stiles's attorney asked whether an individual could still work as a shipping and receiving clerk if he was unable to lift and carry 50 pounds occasionally and 20 pounds frequently for any more than four hours a day. (Id. at 143.) The VE opined that such an individual would be unable to work as a shipping and receiving clerk on a full-time basis. (Id.)

**D.     The ALJ's Decision**

On April 9, 2013, the ALJ issued a decision denying Stiles's application for DIB. (A.R. 19-34.) In applying the standard five-step sequence for assessing disability, *see* 20 C.F.R. § 404.1520(a), at step one the ALJ determined that while Stiles's earnings through 2011 were below the substantial gainful activity threshold, after January 2012 Stiles earned above that threshold. (A.R. 22.) Accordingly, the ALJ found that Stiles's claim warranted partial denial for the

period after 2012. (Id.) At step two, the ALJ found that Stiles's affective disorder and osteoarthritis constitute severe impairments. (Id.) At step three the ALJ determined that none of Stiles's impairments meet or medically equal any listed impairment. (Id. at 23.) Before turning to step four, the ALJ determined that Stiles has the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently, to be on his feet standing and walking about six hours in an eight-hour workday and sit about six hours with normal rest periods, but that he should avoid jobs deemed to be highly stressful. (Id. at 25.) At step four the ALJ determined that Stiles's RFC prevents him from performing his past relevant work, but that there are other jobs that exist in significant numbers in the national economy that Stiles can perform. (Id. at 32.) Accordingly, the ALJ concluded that Stiles is not disabled and therefore not entitled to DIB. (Id. at 34.)

**Analysis**

Stiles asserts that the ALJ erred in his RFC assessment, credibility analysis, and step-four determination. (See R. 11, Pl.'s Mem. at 7-15.) This court reviews the ALJ's decision only to ensure that it is supported by substantial evidence, defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). At the same time, the court will not "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Minnick v. Colvin,* 775 F.3d 929, 935 (7th Cir. 2015). But the court is "not free to replace the ALJ's estimate of the medical evidence" with its own, *see Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), and must uphold the

11

decision even where "reasonable minds can differ over whether the applicant is disabled," *see Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). In rendering a disability determination, the ALJ is required to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

A.   RFC Assessment

Stiles first contends that the ALJ inappropriately interpreted his part-time work and earnings in 2012 and 2013 as indicating that he engaged in substantial gainful activity during that time and was also capable of full-time work between December 2008 and 2011. (R. 11, Pl.'s Mem. at 6-8, 15.) While it is wrong to equate limited part-time work with the ability to perform full-time work, *see Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011), that is not what the ALJ did here. Rather, the ALJ properly concluded that Stiles's work activity after his alleged onset date is "an *indication* of his ability to work" and one of among many factors the ALJ considered in determining Stiles's RFC. (See A.R. 22 (emphasis added).) This is not a case where the ALJ failed to ask critical questions about Stiles's actual work hours or absentee rates. *Cf. Jelinek*, 662 F.3d at 812. Here, the ALJ heard extensive testimony at both hearings regarding the nature of Stiles's part-time work. (A.R. 67, 109-15.) Furthermore, the ALJ was entitled to conclude based on Stiles's earnings in 2012 and 2013 that he engaged in substantial gainful activity during that time. According to 20 C.F.R. § 404.1574(a)(1), if a claimant worked for

substantial earnings, the Commissioner will generally find that he is able to engage in substantial gainful activity. The court therefore finds no error in the ALJ's consideration of Stiles's work activity in determining his RFC.

Stiles also argues that the ALJ ignored evidence supporting the severity of his alleged depression symptoms, erroneously relying on the opinions of state agency physicians who never examined him. (R. 11, Pl.'s Mem. at 8-9.) He contends that the ALJ "cherry-picked evidence" to support his conclusion of non-disability and that the medical records "describe a severely limited individual who was unable to maintain any kind of full-time competitive work on a sustained basis." (Id. at 8.) But Stiles mischaracterizes the record and overlooks the ALJ's thorough discussion of his treatment history. First, Stiles cites to a letter written by his therapist and asserts that she "concluded that plaintiff's depression and concentration problems would impede his ability to maintain a full-time job." (Id.) However, the letter states that "[*Stiles*] has reported concerns that his depression and concentration difficulties would impede his ability to maintain a full-time job." (A.R. 718 (emphasis added).) Setting aside the fact that the letter was written by a social worker who is not an "acceptable medical source" for purposes of proving an impairment, *see* 20 C.F.R. § 404.1513(a), Stiles's therapist did not opine that he is severely limited, (see A.R. 718). Second, the ALJ did address Stiles's voluminous treatment records, noting that after his hospitalization in 2008, Stiles showed improvement with treatment and medication. (Id. at 28.) The ALJ pointed out that Stiles often rated his depression as a 5 out of 10 and frequently reported doing

13

"better." (Id.) He noted that Stiles said his medications were helping and that his GAF scores generally stayed in the 55 to 60 range (indicating moderate symptoms) throughout his treatment. (Id. at 28-29); DSM-IV-TR. The ALJ also highlighted the fact that mental status examinations consistently showed that Stiles exhibited normal behavior, motor activity, speech, awareness, cognitive functioning, thought process and content, social interactions, insight, and judgment. (See id. at 30.) Accordingly, the ALJ did not commit reversible error in considering the evidence before him and finding that Stiles is not disabled.

Nor did the ALJ err in relying on state agency opinions. Stiles argues that the ALJ "discounted countervailing evidence from treating specialists who established more severe functional limitations" in favor of non-examining doctors who did not take into account all of the medical evidence. (R. 11, Pl.'s Mem. at 9.) Yet it is unclear what "countervailing evidence" Stiles is referring to because he provides no citation in support of his assertion, and his treatment records are not inconsistent with the consulting psychologists' opinions. For example, Dr. Hollerauer and Dr. Tin opined that Stiles's major depression does not constitute a severe impairment and that he only has mild difficulties with daily activities, social functioning, and concentration, persistence, or pace. (See A.R. 629-42, 652-54.) As noted above, Stiles's treatment records indicate that after December 2008, he demonstrated largely normal speech and cognitive functioning, congruent affect, organized and normal thought process and content, and normal insight and judgment. (See, e.g., id. at 665, 763-64, 1110.) Moreover, Stiles does not explain

14

how taking into account additional treatment records post-dating the state agency consultants' review would have altered their findings. Records from Stiles's therapist and psychiatrist from May 2009 through June 2011 consistently note stability as well as improvement, normal mental status exams despite depressed moods, and GAF scores generally consistent with only moderate symptoms. (See, e.g., id. at 603, 662, 708-10, 836-38, 906-43, 1005-07, 1129, 1156, 1229.)

Stiles also argues that the ALJ illogically gave moderate weight to the state consultants' opinions while rejecting their conclusion that Stiles does not have a severe mental impairment. (Id.) But the ALJ was entitled to afford weight to some portions of the consultants' opinions while also concluding in Stiles's favor that his depression constitutes a severe mental impairment in that it "more than minimally limits" his mental capacity to perform one or more basic work activities. (Id. at 22); *see Ulloa v. Astrue*, 611 F. Supp. 2d 796, 809-810 (N.D. Ill. 2009) (finding no error where ALJ "accepted certain portions" of an expert's opinion and rejected others).

Stiles further contends that the ALJ failed to develop the record and should have granted his request for an additional psychological evaluation and an orthopedic exam with x-ray testing. (R. 11, Pl.'s Mem. at 9-10, 11-12.) The court disagrees. While an ALJ must summon a medical expert if one is necessary to provide an informed basis for determining whether the claimant is disabled, *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000), Stiles has not shown that review by other experts was necessary, *see Dardon v. Colvin*, No. 12 CV 50398, 2015 WL 1915606, at *4 (N.D. Ill. Apr. 27, 2015) (citing *Richardson v. Astrue*, No. 11 CV

1002, 2012 WL 4467566, at *8-9 (S.D. Ind. Sept. 26, 2012) (finding no error in ALJ's failure to call medical expert when no showing that ALJ disregarded evidence or failed to explain reasoning)). Additional expert review would have been required if no medical evidence existed to support Stiles's RFC, *see Martinez v. Colvin*, No. 12 CV 50016, 2014 WL 1305067, at *14 (N.D. Ill. Mar. 28, 2014), but that was not the case here. The Seventh Circuit "recognize[s] that, because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). And as noted above, multiple experts provided opinions regarding Stiles's mental and physical impairments which are supported by the record as a whole. *See Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012) (noting that an ALJ is entitled to accept state consulting physicians' opinions where no contradictory medical opinion identified); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (observing that ALJ's duty to make complete record "can reasonably require only so much" because "no record is 'complete'—one may always obtain another medical examination, [or] seek the views of one more consultant" (quotation and citation omitted)). As such, the court finds that additional evaluations and testing were unnecessary and that the ALJ's RFC assessment is sufficiently supported.

**B.  Symptom Evaluation**

The court next addresses Stiles's argument that the ALJ improperly discredited his symptom allegations based on what the ALJ found to be his "routine

16

and conservative treatment," a lack of objective medical evidence, and his daily activities. (See R. 11, Pl.'s Mem. at 10-11.) Before going further, the court acknowledges the new Social Security Ruling that recently went into effect which eliminated the term "credibility" from the ALJ's review of a claimant's symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *1 (March 28, 2016) (superseding SSR 96-7p). But even under the new SSR, the ALJ is still required to test the consistency of the claimant's statements in evaluating the severity of her symptoms by weighing familiar factors such as medical opinions, the claimant's daily activities, medications, and treatment attempts. *Id.* at *6-8.

Here, the ALJ did not err under either SSR 96-7p or SSR 16-3p. First, the ALJ was entitled to discount Stiles's symptom allegations because of his routine and conservative treatment. The ALJ acknowledged Stiles's explanation that his routine treatment "is due to financial problems[.]" (A.R. 27.) However, the ALJ went on to note that even when Stiles saw his doctor at Mile Square *after* he lost insurance coverage, his reports were inconsistent with the severity of his alleged symptoms. (Id.) Indeed, Stiles testified at the second hearing that he only takes ibuprofen every other day for pain, even though he previously rated his pain as an 8 out of 10. (Id. at 129, 643.) As for "objective medical evidence," the ALJ cited to an x-ray which showed only mild narrowing of the joint space in his right knee. (Id. at 27, 643-46.) He also cited Dr. Patil's consultative examination which revealed only slight reductions in the range of motion in Stiles's knees. (Id.) The ALJ further noted Stiles's testimony that he is "very depressed and feels that his body is falling

17

apart," but as discussed at length above, state experts and even Stiles's own treatment providers did not observe symptoms from his depression or arthritis that would prevent Stiles from working. (See id. at 26.)

Finally, the ALJ did not err in finding Stiles's activities of daily living inconsistent with his symptom allegations. The ALJ noted that Stiles lives with and cares for his disabled brother, reported walking three to four miles multiple times a week, and was able to work after his alleged onset date. (Id. at 27.) He recognized that Stiles's work has been part-time, but explained that his job is an indication of his ability to work. (Id.) Furthermore, the ALJ relied on the opinion of Dr. Tin, who found Stiles's allegations to be only "partially credible" because Stiles reported being able to search the internet for two to three hours, but also said he could only concentrate for 30 minutes. (See id. at 652-54.) Dr. Bitzer also opined that Stiles is "partially credible" because Stiles said he had difficulty bending and "completing all physical activities," but objective evidence showed only "mild abnormalities which should cause no more than minimal limitations." (Id. at 657.) Because the ALJ had ample reasons to discredit Stiles's allegations, the court finds no reason to remand on the basis of the ALJ's symptom analysis.

C.  **Step-Four Analysis**

Stiles contends that the ALJ's hypothetical question to the VE at the second hearing did not include all the limitations it should have. (See R. 11, Pl.'s Mem. at 13.) However, the ALJ was only required to include limitations that he found supported by the record, *see Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009);

18

*Outlaw v. Astrue*, 412 Fed. Appx. 894, 898 (7th Cir. 2011), and as the Commissioner and this court have made clear, the ALJ was entitled to exclude the limitations Stiles alleges from the RFC determination because they lack support. For example, Stiles asserts in his brief that he can have only minimal contact with managers and supervisors and no contact with the general public, and that his depression would affect his ability to concentrate "more than 10% of the time." (See R. 11, Pl.'s Mem. at 13-14.) But he cites no records supporting those limitations, and no opinion in the record indicates that he would be so limited.

Stiles also argues that the ALJ failed to take into account the level of his absenteeism in finding that he can perform his past relevant work. (Id. at 14.) It does appear that Stiles frequently misses work or shows up to work late. (See id.) But while Stiles may have established that he is absent from work often, he has failed to show that his physical or mental impairments caused him to be absent from work. Although he testified that he misses one day a week due to his depression, (A.R. 115-16), the ALJ found his testimony regarding his symptoms to be unsupported by the record, (id. at 26). Furthermore, none of the state agency consultants or Stiles's own treatment providers rendered any opinion about required absences tied to his condition. *Cf. Bouchard v. Barnhart*, 38 Fed. Appx. 332, 336 (7th Cir. 2002) (affirming ALJ's decision to discount treating physician's opinion that claimant "would require a minimum of two months of unexpected absences per year," because "no other doctor was of the same view"). Because Stiles has not shown that his impairments caused his absenteeism, or that the ALJ

19

mishandled the evidence regarding his RFC, he has not met his burden of showing that a remand is necessary.

## Conclusion

For the foregoing reasons, Stiles's motion is denied, the government's motion is granted, and the Commissioner's decision is affirmed.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**